NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED


IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


HAROLD KRUEGER,                          )
                                         )
             Appellant,                  )
                                         )
v.                                       )   Case No.  2D18-3823
                                         )
QUEST DIAGNOSTICS, INC., MPN,            )
LLC, a Florida limited liability company )
and BRUCE STRUMPF, INC., a Florida       )
corporation,                             )
                                         )
             Appellee.                   )
                                         )
_____)

Opinion filed September 13, 2019.

Appeal from the Circuit Court for
Hillsborough County; Elizabeth Rice,
Judge.

Chris W. Altenbernd of Banker Lopez
Gassler, P.A., Tampa, for Appellant.

Dennis A. Lopez of Dennis A. Lopez, P.A.,
Tampa, for Appellant.

Jonathan N. Zaifert of Caglianone & Miller,
P.A., Tampa, for Appellee, MPN, LLC.

Gregory S. Jones and Carla M. Sabbagh of
Rywant, Alvarez, Jones, Russo, and
Guyton, P.A., Tampa, for Appellee, Bruce
Strumpf, Inc.

LUCAS, Judge.

In this premises liability case, Harold Krueger appeals a final judgment entered against him and in favor of the defendants below, MPN, LLC (MPN), and Bruce Strumpf, Inc. (Strumpf), following the circuit court's entry of a directed verdict. As we will explain, the circuit court's ruling was in error.

On September 10, 2016, Mr. Krueger was injured when he fell near a curb in a strip mall parking lot. The area where he fell was in front of Quest Diagnostics, Inc. (Quest), the medical facility he had been visiting that day. Mr. Kreuger, who is elderly and disabled, had parked in the handicapped parking space closest to the Quest office. He was apparently trying to return to his vehicle when he fell.

In April 2017, Mr. Krueger filed a complaint against Quest,[1] MPN (the owner of the strip mall), and Strumpf (the entity that managed the strip mall premises). His complaint alleges a fairly straight-forward premises liability theory of negligence. Specifically, Mr. Kreuger claimed that Strumpf and MPN negligently maintained the strip mall parking lot by not providing a suitable curb "cut" that would have allowed handicapped patrons a sufficiently direct access to and from the handicapped spaces that were in the vicinity of Quest. He alleged that the presence of the curb between the sidewalk outside of Quest and the parking lot constituted an impediment to his access to the Quest office and that the failure to provide a cut in the curb violated MPN and Strumpf's duty of care to handicapped patrons such as himself.

---

[1]Quest was dropped as a defendant prior to trial and has not appeared in this appeal.

The case proceeded to trial on May 7, 2018. Mr. Krueger's case revolved, in large part, around establishing that the Florida Accessibility Code for Building Construction[2] required a minimal distance between a handicapped parking space and an accessible entrance to Quest via the shortest accessible route. The parking lot, according to Mr. Krueger's view of the Florida Accessibility Code, did not provide such a route for disabled patrons such as Mr. Krueger, partly because of the impediment of a step (and the absence of a curb cut) in the sidewalk along this particular area of the parking lot and partly because of the disbursement of the handicapped spaces throughout the parking lot. Mr. Krueger had retained an architect, Daniel Robison, who would have testified to that effect. In Mr. Robison's opinion, this area of the strip mall parking lot did not comply with the Florida Accessibility Code.

The circuit court, however, was troubled by the way Mr. Krueger sought to invoke the Florida Accessibility Code in this case. The court had carefully studied numerous provisions within the Florida Accessibility Code and reviewed reported Americans with Disabilities Act (ADA) decisions, and it came to the conclusion that there was a difference between building code provisions that addressed safety and those that addressed accessibility. According to the court, even though the Florida Accessibility Code is part of the Florida Building Code, "the Florida Accessibility Code, the particular one with which your witness's opinion is based is not a safety code and so if it's not a safety code, then I'm relying on the case law with respect to the ADA that

---

[2]See § 553.503, Fla. Stat. (2017) (adopting federal standards and regulations and incorporating the same as state law and the Florida Accessibility Code for Building Construction); Fla. Admin. Code 61G20-4.002 (adopting the Florida Accessibility Code for Building Construction as updated by the Florida Building Commission into the Florida Administrative Code).

- 3 -

says the ADA is merely an accessibility code."[3]  From that conclusion, the court excluded the entirety of Mr. Robison's testimony, as well as testimony from other witnesses about a curb cut that could have been placed in front of the Quest office, a curb cut near another tenant of the strip mall, and work that had been performed on the parking lot in 2012 and 2016.

With Mr. Krueger's claim effectively eviscerated,[4] the circuit court granted the defendants' motion for directed verdict at the conclusion of his case.  Mr. Krueger filed a motion for new trial, which the circuit court denied.  The circuit court then entered the final judgment now before us on appeal.

We review the entry of a directed verdict de novo.  See Christensen v. Bowen, 140 So. 3d 498, 501 (Fla. 2014); Omega Ins. Co. v. Wallace, 224 So. 3d 864,

---

[3]The case law the circuit court refers to here are two summary judgment orders issued by a federal district court in Michigan, Vasteenkiste v. Lakeside Mall, LLC, No. 12-CV-15055, 2014 WL 2744172, at *9 (E.D. Mich. June 17, 2014), and Pollard v. TMI Hospitality, GP, LLC, No. 16-11281, 2017 WL 1077682, at *3 (E.D. Mich. Mar. 22, 2017), wherein the district court ruled that the ADA does not create a private cause of action.  Mr. Krueger never asserted a claim premised on the ADA; his was a common law negligence cause of action.  More precisely, it was a failure to maintain negligence claim that was not dependent on whether the particular condition of the sidewalk was open and obvious.  Cf. Leon v. Pena, 274 So. 3d 410, 412 (Fla. 4th DCA 2019) ("But while the obvious danger doctrine may discharge the duty to warn in certain circumstances, it does not automatically discharge the landowner's duty to maintain the premises . . . ."); Middleton v. Don Asher & Assocs., 262 So. 3d 870, 872 (Fla. 5th DCA 2019) ("Thus, notwithstanding that the condition of the sidewalk was open and obvious, Appellees had a duty to maintain the property in a reasonably safe condition by repairing conditions that they foresee will cause harm." (first citing Dampier v. Morgan Tire & Auto, LLC, 82 So. 3d 204, 206 (Fla. 5th DCA 2012); then citing Lomack v. Mowrey, 14 So. 3d 1090, 1092 (Fla. 1st DCA 2009))).

[4]The circuit court acknowledged as much to Mr. Krueger's trial counsel when it remarked "the Court made its rulings in connection with the expert, and of course, Mr. Lopez, that did severely impact what evidence you were able to put to the jury in this case."

867 (Fla. 2d DCA 2017). Like a trial court when it decides a motion for directed verdict, on review we must consider "the evidence and all inferences of fact in the light most favorable to the nonmoving party." Christensen, 140 So. 3d at 501. "Florida law cautions against a motion for directed verdict in negligence cases since the evidence to support the elements of negligence are frequently subject to more than one interpretation." Nunez v. Lee County, 777 So. 2d 1016, 1016 (Fla. 2d DCA 2000) (quoting Regency Lake Apartments Assocs. v. French, 590 So. 2d 970, 972 (Fla. 1st DCA 1991)).

Numerous courts have recognized that a jury in a premises liability case may consider building code provisions in determining whether a defendant complied with a common law duty of care. See Spadafora v. Carlo, 569 So. 2d 1329, 1331 (Fla. 2d DCA 1990) ("[A] violation of the building code is evidence of a breach of the standard of care in a premises liability case against a commercial landowner."); Lindsey v. Bill Arflin Bonding Agency Inc., 645 So. 2d 565, 567 (Fla. 1st DCA 1994) ("Because a 'building code is designed to protect the general public rather than a particular class of individuals,' a violation constitutes evidence of negligence . . . ." (quoting Grand Union Co. v. Rocker, 454 So. 2d 14, 16 (Fla. 3d DCA 1984))); Liberty Mut. Ins. Co. v. Kimmel, 465 So. 2d 606, 607 (Fla. 3d DCA 1985) (holding that evidence that a walkway "was built contrary to the South Florida Building Code" was "in and of itself evidence of negligence"). Indeed, building codes, and what constitutes compliance with a particular code provision, are often hotly contested issues for the jury to sort through in cases such as Mr. Krueger's. The circuit court's error here appears to have stemmed from its attempt to apply a legal distinction between building code provisions that serve to foster

- 5 -

"access" versus those that serve to advance "safety." In this case, that turned out to be a false dichotomy.

First, we would note that the statutes the circuit court identified do not purport to create the specific distinction the circuit court gleaned. Accord Nat'l Auto Serv. Ctrs., Inc. v. F/R 550, LLC, 192 So. 3d 498, 504 (Fla. 2d DCA 2016) ("The interpretation of a statute begins 'with the plain meaning of the actual language' the statute employs." (quoting Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013))). Second, even insofar as certain parts of the Florida Building Code appear to primarily address access requirements for the disabled, it does not follow that those same provisions do not also promote safety for the disabled. Viewed as a whole and in the context of this premises liability case, Mr. Krueger proffered pertinent statutes and relevant evidence on what may have been the most sharply disputed issue here: the question of whether he was owed a legal duty.

Unfortunately, by excluding Mr. Krueger's evidence and applying an overly circumscribed view of the Florida Accessibility Code the circuit court effectively stymied a proper consideration of this issue. See generally Limones v. Sch. Dist. of Lee Cty., 161 So. 3d 384, 389 (Fla. 2015) ("The judicial determination of the existence of a duty is a *minimal* threshold that merely opens the courthouse doors."); McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992) ("Duty is the standard of conduct given to the jury for gauging the defendant's factual conduct. As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant."); Smith v. Fla. Power & Light Co., 857 So. 2d 224, 230 (Fla. 2d DCA 2003) (observing that duty in tort law "is a relational concept" and that "[a] duty

is owed by a particular defendant to a particular plaintiff based on particular circumstances").[5]  With the evidence he proffered, Mr. Krueger would have reached the minimal threshold for the jury to consider his negligence claim.

We must, therefore, reverse the final judgment below and remand this case for further proceedings.

Reversed and remanded.

KHOUZAM, C.J., and SMITH, J., Concur.

---

[5]Although Civil Standard Jury Instruction 401.4 tasks the jury in a negligence claim to consider what "a reasonably careful person would not do under like circumstances" or if the defendant had failed "to do something that a reasonably careful person would do under like circumstances," duty is considered a question of law to be resolved by the court.  See Sch. Bd. of Miami-Dade Cty. v. Martinez-Oller, 167 So. 3d 451, 453 (Fla. 3d DCA 2015) ("The recognition of the existence of a legal duty is a question of law for the court, not a determination for the jury." (citing McCain, 593 So. 2d at 502)).  In fairness to the circuit judge who presided over this case, treating this element as an issue of law has always posed something of an analytical challenge in its application.  See Dennis v. City of Tampa, 581 So. 2d 1345, 1349 (Fla. 2d DCA 1991) ("A clear analysis of the function of the trial judge and the jury in defining standard of care is often difficult in negligence cases." (citing Cassel v. Price, 396 So. 2d 258 (Fla. 1st DCA 1981))); see also Rory Bahadur, Almost a Century and Three Restatements After Green It's Time to Admit and Remedy the Nonsense of Negligence, 38 N. Ky. L. Rev. 61, 72 (2011) ("While duty evolved as a way of expanding negligence liability and proximate cause evolved as a means to limit negligence liability, both are based on the same analytical fulcrum of foreseeability.  And therein lies the rub." (footnote omitted)); Paul F. Macri, How the Law Court Uses Duty to Limit the Scope of Negligence Liability, 53 Me. L. Rev. 503, 504, 505 (2001) (remarking that the legal question of duty in tort law is "circular" in application and "the least understood and most amorphous element of negligence").